By the Court—Monell, J.
The facts disclosed upon the second trial were identical with those proved on the first trial. I cannot perceive, after a careful examination *303 of the evidence given on the first trial, that the plaintiff has made ont any stronger or different case than was presented to the General Term,, when this ease was up before.
The learned Justice who delivered the opinion of the Court on that occasion, decided, and, as I think, correctly, that there was no evidence in the case which would render the defendant liable for any act, negligent or otherwise, of the workmen employed to remove the railing from the sidewalk. They were the servants of Oarnley, who had undertaken to do the work for the Third Avenue Railroad Company, and who alone could exercise control over them, and were not in any sense the employees of the defendant. It was not necessary then, nor is it now, to decide whether the action might have been maintained against the Third Avenue Railroad Company or against Oarnley. It is sufficient that the defendant in this action is not liable. On both trials, the only evidence to charge the defendant, was, that he gave the order to Oarnley to do the work; that he did so by the direction of the railroad company, for whom the work was done, and had no other or further connection with* it. It is manifest, therefore, that the defendant cannot be held responsible for any negligence of the servants of Oarnley, over whom the defendant could not exercise any control, and who were not in any way subject to his direction.
In the view, therefore, taken by the General Term of this Court, the order and judgment appealed from must be affirmed, unless a new point, now, apparently, for the first time taken, should lead to a different conclusion.
It is now claimed, that the removal of the rail was without authority, and, therefore, all persons who directed, advised, assisted or countenanced its removal are to be regarded as co-trespassers, and liable for the injury sustained by the plaintiff, who was in the lawful use of the street where the trespass was committed. The evidence of the authority was, that permission to remove the rail was obtained by the Third Avenue Railroad Company, *304 from the Street Commissioner, and it is now.insisted that such authority should have come .from the Commissioner of Repairs and Supplies, and not from the Street Com- . missiouer. •
The case on the former trial contains the same evidence, b,nt it does not distinctly appear that the objection now taken was then urged; although the learned Justice treated the permission received from the Street Commis* sioner as sufficient authority to render the removal of the rail-lawful, for he says, “ this rail, we must assume, might, lawfully be removed.” And hence I would probably be justified in concluding that this point was considered and passed upon by the Court.
But, assuming that it'was not, can it be of any avail to the plaintiff ?
: We are referred to sections 12 and 13 of the Amended Charter of 1849, (Sess. Laws 1849, 278, 281,) which pro-: vide, (§ 12): “ There shall be an executive department, under the denomination of the ‘ Street Department;’ which shall have cognizance of opening, regulating and paving streets. The chief officer shall be.called the Street Commissioner.” And, (§ 13,) “ There shall be an executive department, to be denominated the Department of Repairs and Supplies,’ which shall have cognizance of all repairs and supplies of and for roads and avenues, public pavements; * * the chief officer thereof shall be called the Commissioner of Repairs and Supplies.”
, The evidence was, that the Third Avenue Railroad Company applied to the Street Commissioner for permission to widen Chatham street at its junction with Pearl street, to afford additional and increased accommodation to their cars in passing that point. The permission was given by the Street Commissioner. In preparing to widen the street, it became necessary to remove the rail in question, the removal of which occasioned the injury to the plaintiff. Even if Chatham street is to be regarded as a “ road ” or “avenue,” within the meaning of the 13th section df the Amended Charter, of which I think there is great *305 doubt, it appears to me to be quite clear, that the permission. applied for Avas not to “ repair,” but rather to “ regulate and pave” the street. The duty of the Commissioner of Repairs and Supplies is confined to repairing roads and avenues, and of the Street Commissioner, to opening, regulating and paving streets, and, in my opinion, the latter officer Avas the proper functionary to authorize an alteration of the character applied for by the railroad company. If the roads or avenues, (by Avhich is meant, I think, the country roads and the avenues, as distinguished from the streets proper,) are out of repair, caused by their use, or by caving, or by flood, or by accident, it is doubtless the duty of the Commissioner of Repairs and Supplies to cause them to be repaired; but Avhere an alteration of the street is to be effected, or it is to be opened, or regulated, or paved, the Street Commissioner is the proper officer to authorize the work.
The permission, therefore, obtained by the railroad company from the Street Commissioner, gave them authority to remove the rail; and they or the workmen of Carnley were engaged in a lawful act when the accident occurred; and neither they nor those by whose direction they were engaged, were trespassers.
The order and judgment appealed from must be affirmed, with costs.